<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| BRIAN MCCLURE, <br><br> Plaintiff, <br><br> v. <br><br> JOHNSON & JOHNSON, *et al.*, <br><br> Defendants. | Civil Action No. 24-9139 (MAS) (JTQ) <br><br> **MEMORANDUM OPINION** |

<u>SHIPP, District Judge</u>

This matter comes before the Court upon two motions to dismiss Plaintiff Brian McClure's ("Plaintiff") First Amended Complaint (the "FAC") (ECF No. 26): (1) Defendant Johnson & Johnson's ("J&J") Motion to Dismiss the Amended Complaint or, in the alternative, to Compel Arbitration (ECF No. 39)[1]; and (2) Defendant Johnson & Johnson (China) Investment, Ltd.'s ("J&J China" and collectively with J&J, "Defendants") Motion to Dismiss (ECF No. 65). Plaintiff opposed both motions (ECF Nos. 42, 67), Defendants each replied (ECF Nos. 45, 71), Plaintiff filed sur-replies (ECF Nos. 55, 74), and J&J filed a sur-sur-reply (ECF No. 59). The Court has carefully considered the parties' submissions and reaches its decision without oral argument under Local Civil Rule 78.1(b). For the reasons below, Defendants' Motions are granted.

---

[1] On October 2, 2025, J&J's motion was administratively terminated pending receipt of Plaintiff's sur-reply and J&J's sur-sur-reply. (*See generally* Oct. 2, 2025, Text Order, ECF No. 52.) The Court has since received the sur-reply and sur-sur-reply. The Court, accordingly, reinstates J&J's Motion. (*See* J&J's Motion to Dismiss, ECF No. 39.)

## I.  BACKGROUND[2]

### A.  Factual Background

Plaintiff's allegations stem from Defendants' purported "unlawful and systematic discrimination and retaliation" in violation of the Americans with Disabilities Act (the "ADA") and the New Jersey Law Against Discrimination (the "NJLAD"). (FAC ¶ 1, ECF No. 26.)

Plaintiff began his career with J&J at its New Jersey headquarters in 2014. (*Id.* ¶ 17.) Although Plaintiff is an American citizen, since approximately April 2014, Plaintiff "worked remotely for Defendants' New Jersey-based operations, and lived in Shanghai, [People's Republic of China ('PRC')], with his family, as part of [J&J China]." (*Id.* ¶ 16.) At all relevant times, Plaintiff was employed as a Senior Director, Head of Supply Chain Procurement for Asia-Pacific Countries ("APAC") and "his cost center was either in [United States] Global Procurement or Global R&D, both of which were headquartered in the United States, in New Jersey." (*Id.* ¶¶ 12, 17.)

In March 2020, while Plaintiff was still living and working in Shanghai, the government of the PRC ordered a COVID-19 lockdown of its residents that lasted six months. (*Id.* ¶¶ 25, 29.) "Lockdowns of varying duration and intervals persisted for weeks and months well into 2022." (*Id.* ¶ 29.) In early March 2022, another lockdown began in Shanghai where people could not leave their homes. (*Id.* ¶ 30.) During this lockdown, the government of the PRC would provide food to residents once a week, and sometimes less frequently. (*Id.* ¶ 32.) As a result, at times Plaintiff and his family were not given adequate food to sustain themselves. (*Id.* ¶ 33.) Plaintiff and his family also suffered from "terrible" anxiety and had no support from Defendants. (*Id.* ¶ 34.) J&J China's

---

[2] The Court accepts the factual allegations in the FAC as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008).

Employee Assistance Program was "unable to set up any medical support" for Plaintiff and his family, and instead, Defendants referred Plaintiff to Employee Assistance Programs based in the United States, which also could not assist Plaintiff and his family. (*Id.* ¶¶ 35-36.) Plaintiff also unsuccessfully asked his supervisor, Ralf Garczorz ("Garczorz"), who worked in Switzerland, as well as other employees in the PRC operations, for assistance leaving the country. (*Id.* ¶ 38.) Plaintiff further requested support from Defendants' New Jersey headquarters "for his teammates who could not leave PRC," which was also unsuccessful. (*Id.*)

Throughout the lockdowns and Plaintiff's struggles, Plaintiff performed well in his role and was praised by Garczorz for his work in an August 4, 2022, group meeting. (*Id.* ¶ 39.) In August 2022, however, the "emotional toll of working under unbearable conditions became too much for [Plaintiff] to handle along with the demanding role of his job." (*Id.* ¶ 40.) Plaintiff therefore "began taking a mix of personal, sick[,] and vacation leave in August 2022" for his "mental and physical recuperation[.]" (*Id.* ¶ 41.) Plaintiff expressed to Defendants his need for recuperation and independently returned to the United States around August 8, 2022. (*Id.* ¶¶ 41-42.) Both before and after Plaintiff returned to the United States, Garczorz told Plaintiff he had no leave that he could take, and J&J China denied an accommodation request for Plaintiff to work remotely while living in New Jersey. (*Id.* ¶¶ 43-44.) Instead, Plaintiff "was told that his only option available to him to maintain his employment was to transfer to a different [United States]-based role with J&J." (*Id.* ¶ 44.) Plaintiff was never given an explanation as to why his remote work request was denied, despite the fact that "[o]ther high-level employees without qualifying disabilities at J&J similarly situated to [Plaintiff] were permitted to work remotely." (*Id.* ¶ 47.) Plaintiff claims, however, that he could have adequately completed all essential functions of his job while working remotely in New Jersey. (*Id.* ¶ 47.)

3

After Plaintiff's request for an accommodation to work remotely was denied,[3] he attempted to transfer to a United States-based role at J&J. (*Id.* ¶ 45.) On August 29, 2022, Plaintiff was offered the temporary role of Director of Supplier Assurance, which was significantly lower in pay than his current role, as a take-it-or-leave-it job with approximately four days to accept it. (*Id.* ¶¶ 45-46.) Defendants conditioned reimbursing Plaintiff's relocation costs on acceptance of the job offer. (*Id.* ¶ 48.) Moreover, Plaintiff was told "that if he did not take the position, he would not be paid, would not have any insurance, would be 'on his own' and told that the [United States] team would not offer any support." (*Id.* ¶ 49.) In late August 2022, through Plaintiff's communication with the Human Resources ("HR") department in the PRC office, Plaintiff also learned that he could take six months of paid leave. (*Id.* ¶ 50.)

The Friday after Plaintiff returned to the United States in August 2022, Ralphfiel Farrar ("Farrar") from J&J's HR department "created calendar invites for [thirty] minute meetings every [thirty] minutes all afternoon and into the following Monday, until [Plaintiff] finally accepted an invite." (*Id.* ¶ 52.) Plaintiff told Farrar that "he was on leave and trying to take care of his family and his own health needs and requested communications be resumed at the end of [Plaintiff's] leave." (*Id.*) Additionally, around this time, Garczorz sent e-mail correspondence to Plaintiff's personal e-mail address insisting that Plaintiff sign J&J's offer. (*Id.* ¶ 53.) On August 31, however, Plaintiff explained that "his personal and mental health situation made it impossible for him to accept the role offered on the timeline provided" and that he decided to apply for a six-month paid leave offered to him instead. (*Id.* ¶ 54.)

---

[3] Plaintiff alleges that the request to work remotely was denied even though Plaintiff was on leave and was "in near constant communication with . . . Defendants" at the time. (FAC ¶ 45.)

4

While Plaintiff was preparing the necessary paperwork for his paid medical leave, Plaintiff's supervisor labeled him "absent from work without approval." (*Id.* ¶ 56.) According to Plaintiff, his leave was "disfavored by his supervisor."[4] (*Id.*) Plaintiff even shared a "full list of over two dozen professionals he was engaging with and seeking appointments with and shared all his updates widely with his supervisor and HR." (*Id.* ¶ 57.) Around September 22, 2022, Plaintiff was diagnosed with post-traumatic stress disorder and major depressive disorder by a licensed psychiatrist. (*Id.* ¶ 58.)

On February 16, 2023, Plaintiff was contacted by Defendants "to ensure his work permit was renewed beyond March 31, 2023, and he was offered, and executed, a new countersigned . . . contract for employment for his current role," which was set to run from April 1, 2023, through March 31, 2026.[5] (*Id.* ¶ 65.) In February, Plaintiff "provided all the relevant documents necessary to extend his PRC work and residence permits" (the "Permits"). (*Id.* ¶ 66.) On March 1, 2023, however, Plaintiff received his 2022 performance evaluation[6] and was notified that his employment contract would not renew, and that he was required to sign another contract to extend his employment through April 15, 2023, the last day of his medical leave. (*Id.* ¶¶ 60, 68.) Plaintiff was told that his employment contract was not being renewed, at least in part, because Plaintiff lacked the appropriate Permits, even though the documents needed for those Permits were submitted to Defendants in February. (*Id.* ¶¶ 60, 69.) That same day, Plaintiff filed an ethics report

---

[4] According to Plaintiff, in September 2022, a J&J employee relations specialist, Frank Lu ("Lu"), communicated to Plaintiff that Garczorz told Lu "the feeling was that [Plaintiff] taking leave is the equivalent to getting paid for doing nothing." (FAC ¶ 59.)

[5] At this time, Plaintiff was employed under a contract that ended on March 31, 2023. (FAC ¶¶ 21, 65.)

[6] Plaintiff alleges that "[t]he evaluation was, inexplicably and without basis in fact, lower than expected, despite his receiving high public praise from . . . Garczorz as late as August 2022, immediately before [Plaintiff's] taking [of] paid leave." (FAC ¶ 61.)

5

regarding his concerns of "disability discrimination and leave interference" with J&J's ethics hotline. (*Id.* ¶ 70.) No resolution came from that ethics report. (*Id.*) On March 31, 2023, Plaintiff received e-mail correspondence from Defendants that he was terminated because Plaintiff did not have the required Permits.[7] (*Id.* ¶ 71.)

## B.     Procedural History

Plaintiff initially brought suit against Defendants and Garczorz on September 13, 2024. (*See generally* Compl., ECF No. 1.) Plaintiff subsequently filed his FAC, naming only J&J and J&J China as defendants, asserting six causes of action against them: (1) discrimination in violation of the ADA ("Count One"); (2) retaliation in violation of the ADA ("Count Two"); (3) breach of contract ("Count Three"); (4) discrimination in violation of the NJLAD ("Count Four"); (5) retaliation in violation of the NJLAD ("Count Five"); and (6) wrongful termination ("Count Six"). (FAC ¶¶ 75-117.) Thereafter, Defendants each filed their own motion to dismiss. (*See generally* J&J's Mot. to Dismiss; J&J China's Mot. to Dismiss, ECF No. 65.) Plaintiff opposed both motions (*see generally* Pl.'s Opp'n to J&J's Mot., ECF No. 42; Pl.'s Opp'n to J&J China's Mot., ECF No. 67), Defendants each replied (*see generally* J&J's Reply, ECF No. 45; J&J China's Reply, ECF No. 71), Plaintiff filed sur-replies (*see generally* Pl.'s Oct. 17, 2025, Sur-reply, ECF No. 55; Pl.'s Feb. 27, 2026, Sur-reply, ECF No. 74), and J&J filed a sur-sur reply (*see generally* J&J's Sur-sur-reply, ECF No. 59).

---

[7] Plaintiff responded to that e-mail correspondence indicating that he had previously submitted the required paperwork and that he executed an extended contract, but Plaintiff remains terminated from his employment with Defendants. (FAC ¶¶ 72-73.)

## II.    LEGAL STANDARD

### A.    Motion to Dismiss for Lack of Personal Jurisdiction

Pursuant to Federal Rule of Civil Procedure[8] 12(b)(2), a defendant may move to dismiss an action for lack of personal jurisdiction. "[O]nce a defendant has raised a jurisdictional defense, the plaintiff must prov[e] by affidavits or other competent evidence that jurisdiction is proper." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (second alteration in original) (internal quotation marks and citations omitted). In a diversity action, a New Jersey federal court "has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citations omitted). "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Id.* (citations omitted). "[P]arties who have constitutionally sufficient 'minimum contacts' with New Jersey are subject to suit there." *Id.* (citation omitted).

A federal district court may exercise two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15, 414 n.9 (1984)).

General jurisdiction exists when a defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "The 'paradigm' forums in which a corporate defendant is 'at home []' . . . are the corporation's place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (citing *Daimler*, 571 U.S. at 137). Specific jurisdiction

---

[8] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

allows a court to exercise jurisdiction over a non-resident defendant where: (1) the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum"; (2) the litigation "aris[es] out of or relate[s] to the defendant's contacts with the forum"; and (3) the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Goodyear*, 564 U.S. at 923-24 (alterations in original) (citations omitted).

When the district court does not hold an evidentiary hearing, "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales*, 384 F.3d at 97 (citations omitted). Still, the plaintiff must establish "'with reasonable particularity sufficient contacts between the defendant and the forum state'" to support jurisdiction. *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). And the plaintiff must establish these "jurisdictional facts through sworn affidavits or other competent evidence . . . . [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of [personal] jurisdiction." *Miller Yacht Sales*, 384 F.3d at 101 n.6 (Scirica, J., concurring) (first and second alteration in original) (internal citation and quotation marks omitted). Indeed, the plaintiff must respond to the defendant's motion with "actual proofs"; "affidavits which parrot and do no more than restate [the] plaintiff's allegations . . . do not end the inquiry." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66, 66 n.9 (3d Cir. 1984). If the plaintiff meets this burden, the burden shifts to the defendant, who must make a compelling case that the exercise of jurisdiction would be unreasonable. *Mellon Bank*, 960 F.2d at 1226 (citations omitted).

8

**B.    Motion to Dismiss for Failure to State a Claim**

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

9

### III.   <u>DISCUSSION</u>

Both Defendants move to dismiss all claims asserted against them. (*See* generally J&J China's Moving Br., ECF No. 65-1; J&J's Moving Br., ECF No. 39-1.) The Court first turns to J&J China's motion before addressing J&J's motion.

#### A.   **J&J China's Motion to Dismiss**

In its motion to dismiss, J&J China asserts that: (1) this Court does not have personal jurisdiction over it; (2) the doctrine of *forum non conveniens* requires dismissal; and (3) alternatively, the Court should compel arbitration in China. (*See generally* J&J China's Moving Br.) Because personal jurisdiction is a threshold issue bearing on the judicial power to resolve a suit, the Court first addresses whether it has general or specific personal jurisdiction over J&J China. *See Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 95 (2017) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-85 (1999)); *see also Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[A] federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" (citations omitted)).

#### 1.   *General Jurisdiction*

A court may exercise general jurisdiction over a defendant when that defendant is "at home" in the forum state. *Daimler*, 571 U.S. at 122. "The 'paradigm' forums in which a corporate defendant is 'at home' are the corporation's place of incorporation and its principal place of business," however, in "'exceptional case[s],' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" *BNSF*, 581 U.S. at 413 (citing *Daimler*, 571 U.S. at 137, 139 n.19); *Chavez v. Dole Food Co.*, 836 F.3d 205, 223 (3d Cir. 2016).

Here, Plaintiff alleges that J&J China is "a wholly owned subsidiary of [J&J] established as a foreign investment entity in [the] PRC[.]" (FAC ¶ 5.) The FAC, however, does not otherwise allege facts to establish that J&J China is essentially "at home" in the forum state such that general jurisdiction would be proper over the PRC-based entity. (*See generally id.*) Moreover, Plaintiff effectively concedes that the Court lacks general jurisdiction over J&J China, as Plaintiff only advances arguments regarding specific jurisdiction in his opposition. (*See* Pl.'s Opp'n to J&J China's Mot. 14-20 (arguing only that this Court may assert specific jurisdiction over J&J China).) Accordingly, the Court finds that it lacks general jurisdiction over J&J China and now turns its analysis to whether it has specific jurisdiction.

### 2. *Specific Jurisdiction*

The Supreme Court has articulated two tests for specific jurisdiction: (1) the "traditional" test—also called the "minimum contacts" or "purposeful availment" test, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985) (quoting *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)); and (2) the so-called *Calder* "effects test," *Calder v. Jones*, 465 U.S. 783, 787 n.6 (1984). The traditional test and the *Calder* effects test have distinct requirements, and both should be considered. *See Hasson v. FullStory Inc.*, 114 F.4th 181, 189-90 (3d Cir. 2024).

### a. The Traditional Test

The traditional test hinges upon a defendant's "minimum contacts" with the forum state and entails a three-step analysis. *O'Connor*, 496 F.3d at 316-17. *First*, the defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State" such that the defendant took a deliberate act reaching into the state to do business. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 451 (3d Cir. 2003) (quoting *Asahi Metal Indus. Co. v. Super. Ct. of*

11

*Cal.*, 480 U.S. 102, 109 (1987)); *Hepp v. Facebook*, 14 F.4th 204, 207 (3d Cir. 2021). *Second*, the plaintiff's claim must "arise out of or relate to" at least one of those contacts or activities. *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (quoting *Helicopteros*, 466 U.S. at 414). "For the contacts to satisfy the second prong, there must be a strong relationship among the defendant, the forum, and the litigation." *Hepp*, 14 F.4th at 208 (quotation marks and citation omitted). *Third*, if the foregoing two prongs are met, the Court must ensure that its exercise of personal jurisdiction "comports with traditional notions of fair play and substantial justice" such that "the defendant 'should reasonably anticipate being haled into court' in that forum." *Toys "R" Us*, 318 F.3d at 451 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

J&J China argues that Plaintiff's unilateral actions, "which are the only connection between this litigation and New Jersey[,]" do not constitute sufficient contacts to support finding specific jurisdiction over J&J China. (J&J China's Moving Br. 11-12.) Plaintiff, however, maintains that the traditional test for specific jurisdiction has been met because J&J China: (1) "actively sought to discourage [Plaintiff] from taking available leave in New Jersey"; and (2) "proactively engaged [] J&J to participate in its discriminatory scheme to either condition his medical leave on his acceptance of a temporary subpar assignment with . . . J&J or to extend the take-it-or-leave-it temporary assignment as a result of his medical needs." (Pl.'s Opp'n to J&J China's Mot. 19-20.) The Court agrees with J&J China and finds that Plaintiff has not met his burden in establishing that J&J China directed its activities towards the forum state, in part because Plaintiff concedes that he unilaterally chose to relocate to New Jersey. (*See, e.g.*, FAC ¶¶ 42, 44); *Hanson v. G&G Motorcycles, Inc.*, No. 21-11278, 2022 WL 617068, at *3 (D.N.J. Mar. 2, 2022) (finding that specific jurisdiction was not established because defendant "made no contact with New Jersey at all until after [plaintiff] returned to New Jersey"); *Kelly v. Vigilant Expeditionary Sol., Inc.*,

12

No. 24-503, 2025 WL 2494533, at *6-7 (D.N.J. Aug. 30, 2025) (finding no specific jurisdiction where connections with the forum state were based on plaintiff's unilateral activity); *Crosson v. TMF Health Quality Inst.*, No. 20-18800, 2023 WL 2609048, at *6 (D.N.J. Mar. 23, 2023) (dismissing claim against a Texas corporation for lack of personal jurisdiction because the "fact that [defendant] has a remote employee in [New Jersey] does not mean that it has purposefully availed itself of that employee's home state[]" (second alteration in original) (citation omitted)).

The Court, therefore, is not satisfied that it has specific jurisdiction over J&J China pursuant to the traditional test.

### b.    *The Effects Test*

In the case of intentional torts, such as employment discrimination, the Court may exercise personal jurisdiction when the *Calder* effects test is met. *See Christie v. Nat'l Inst. for Newman Stud.*, 258 F. Supp. 3d 494, 500 (D.N.J. 2017); *Wright v. Xerox Corp.*, 882 F. Supp. 399, 406 (D.N.J. 1995) (applying effects test to an NJLAD claim). That test requires a plaintiff to show that:

> (1) The defendant committed an intentional tort;
>
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; [and]
>
> (3) The defendant expressly aimed [its] tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity . . . .

*Id.* (alteration in original) (quoting *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998)).

The "expressly aimed" element must be met before a court considers the other two elements. *Marten*, 499 F.3d at 297 (citing *IMO Indus.*, 155 F.3d at 266). To meet this element, "the Third Circuit [has] made clear that plaintiff must do more than simply establish that [the] defendant knew that plaintiff was located in a particular forum[.]" *Cabot Corp. v. Niotan, Inc.*,

13

No. 08-1691, 2011 WL 4625269, at *14 (E.D. Pa. Sep. 30, 2011) (citing *IMO Indus.*, 155 F.3d at 265). Rather, the plaintiff must also "point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *IMO Indus., Inc.*, 155 F.3d at 266. Moreover, the focus of the inquiry "is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014).

Here, Plaintiff argues that he has satisfied the "expressly aimed" test, including because J&J China: (1) "participated in and instigated retaliatory conduct targeted toward this forum"; (2) sent "aggressively interminable and harassing meeting invite[s] to coerce [Plaintiff] into not taking leave and taking a demotion in New Jersey"; and (3) determined Plaintiff's Permits were insufficient "which would foreclose his departure to China from New Jersey[.]" (Pl.'s Opp'n to J&J China's Mot. 18-19.) That Plaintiff felt the harm in New Jersey because Plaintiff was located in this state, however, is not enough to meet this exacting standard. *See IMO Indus., Inc.*, 155 F.3d at 263 ("[T]he mere allegation that the plaintiff feels the effect of the defendant's tortious conduct in the forum because the plaintiff is located there is insufficient to satisfy *Calder*."); *Marten*, 499 F.3d at 298 ("[T]he state of plaintiff's residence does not on its own create jurisdiction over nonresident defendants."); *Magill v. Elysian Glob. Corp.*, No. 20-6742, 2021 WL 1221064, at *5-8 (D.N.J. Apr. 1, 2021) (finding that the plaintiff's location in New Jersey and working virtually for a Belize company was not enough to establish that the Belize company defendant expressly aimed its conduct at New Jersey). The Court therefore finds that Plaintiff has not met his burden in showing that J&J China "expressly aimed" its conduct at the forum state.[9]

---

[9] Since Plaintiff failed to sufficiently allege that Defendant "expressly aimed [its] tortious conduct at the forum[,]" the Court need not analyze the remaining elements of the effects test. *See Marten*, 499 F.3d at 297 (citing *IMO Indus.*, 155 F.3d at 266).

Plaintiff's FAC is, accordingly, dismissed as to J&J China for lack of personal jurisdiction.[10]

### B.      J&J's Motion to Dismiss

The Court next turns to J&J's Motion to Dismiss. J&J argues that Plaintiff's FAC should be dismissed in its entirety because: (1) Plaintiff does not allege joint employment between J&J and J&J China; (2) the doctrine of *forum non conveniens* requires dismissal; and (3) in the alternative, this Court should compel arbitration in the PRC. (*See generally* J&J's Moving Br.) The Court turns to whether Plaintiff has adequately alleged a cause of action by alleging that J&J and J&J China are joint employers.

### 1.      *Joint Employment (Counts One, Two, Four, and Five)*

J&J and Plaintiff agree that, for Plaintiff to state a claim under the ADA or NJLAD, "a preliminary showing that [J&J] was a joint employer alongside . . . J&J China . . . is necessary for Plaintiff to survive a motion to dismiss[.]"[11] (Pl.'s Opp'n to J&J's Mot. 10; *see* J&J's Moving Br. 7.) Both parties also agree that the four-part test described in *In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litigation* and the twelve-part test set out in *D'Annunzio v. Prudential Life Insurance Co.* govern whether joint employment exists under the ADA and NJLAD, respectively. (Pl.'s Opp'n to J&J's Mot. 11-14; J&J's Moving Br. 7-8); *In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig.*, 683 F.3d 462, 469 (3d Cir. 2012); *D'Annunzio v. Prudential Life Ins. Co.*, 927 A.2d 113, 121 (N.J. 2007).

---

[10] Because the Court holds that it lacks personal jurisdiction over J&J China, it need not reach J&J China's other arguments.

[11] Since Plaintiff alleges that he "worked under an employment contract with J&J China," J&J must have been a joint employer "to hold [J&J] liable for acts of discrimination." (FAC ¶ 7); *Kalski v. Brandywine Senior Living, LLC*, No. 22-4484, 2022 WL 17823862, at *4 (D.N.J. Dec. 20, 2022) (citations omitted).

Under the *Enterprise* test, joint employment exists if the co-employer has: "(1) authority to hire and fire employees; (2) authority to promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; (3) day-to-day supervision, including employee discipline; and (4) control of employee records, including payroll, insurance, taxes, and the like." *In re Enter.*, 683 F.3d at 469. These factors, however, "*do not constitute an exhaustive list* of all potentially relevant facts, and should not be 'blindly applied.'" *Id.* (emphasis in original) (citation omitted). Moreover, if any "indicia of 'significant control' are present to suggest that a given employer was a joint employer of an employee, that determination may be persuasive, when incorporated with the individual factors . . . set forth." *Id.* at 470.

Under the *D'Annunzio* test, the Court considers the following factors:

> (1) the employer's right to control the means and manner of the worker's performance; (2) the kind of occupation—supervised or unsupervised; (3) skill; (4) who furnishes the equipment and workplace; (5) the length of time in which the individual has worked; (6) the method of payment; (7) the manner of termination of the work relationship; (8) whether there is annual leave; (9) whether the work is an integral part of the business of the "employer;" (10) whether the worker accrues retirement benefits; (11) whether the "employer" pays social security taxes; and (12) the intention of the parties.

*D'Annunzio*, 927 A.2d at 121 (quoting *Pukowsky v. Caruso*, 711 A.2d 398, 404 (N.J. Super. Ct. App. Div. 1998)). This test "focuses heavily on work-relationship features that relate to the employer's right to control the non-traditional employee[.]" *Id.*

Here, J&J argues that "Plaintiff advances only a series of conclusory assertions regarding J&J that are unsupported by any actual alleged facts." (J&J's Moving Br. 8.) Moreover, J&J argues that "Plaintiff's . . . allegations simply presume that J&J China . . . and J&J are a single entity . . . because J&J China . . . is 'a wholly-owned subsidiary' of J&J." (*Id.*) In opposition, Plaintiff argues, in part, that he has adequately pleaded "sufficient factual allegation[s] to plausibly

16

show that . . . J&J meets the definition of joint employer[,]" and points to a number of facts not alleged in the FAC to support his argument.[12] (Pl.'s Opp'n to J&J's Mot. 15, 17-19; *see generally* FAC.)

Applying the joint employment factors under both tests, the Court finds that the FAC does not plausibly plead facts to allege that J&J was Plaintiff's joint employer. (*See generally* FAC.) In the FAC, Plaintiff generally alleges that Defendants are "joint employers" because "J&J exercised significant operational control over Plaintiff's employment, pay, and terms and conditions of employment." (FAC ¶ 7.) To explain such control, Plaintiff alleges in a conclusory fashion that he was "supervised by employees of J&J[,] his payroll was . . . viewed as an expense on a J&J division[,] he used a payroll system shared by [United States]-based employees . . . [,] he was permitted to report into J&J's ethics line for complaints[,] . . . [and] he interfaced" with J&J personnel during the process of requesting medical leave. (*Id.*) The Court finds that these allegations are conclusory in nature and are not sufficient to adequately allege facts to suggest joint employment. *See, e.g., Morel v. Infinite Comp. Sols., Inc.*, No. 26-1723, 2026 WL 1430069, at *2 (D.N.J. May 21, 2026) (dismissing complaint for lack of "sufficient factual allegations" to determine whether joint employment existed and noting that "[p]laintiff must plead facts, not conclusions, supporting th[e] assertion" that defendant is a joint employer); *Carroll v. Sunrise*

---

[12] J&J argues that Plaintiff advances all new facts in his opposition brief and "cannot rely on these new assertions . . . in an attempt to avoid Rule 12(b)(6) dismissal." (J&J's Reply Br. 3-4.) The Court agrees. To the extent Plaintiff is trying to cure the deficiencies of his FAC by alleging new facts in his opposition brief regarding J&J's joint employment status, such an attempt is rejected by this Court. *See Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (alteration in original) (internal quotation marks and citation omitted)); *see also Wealth v. Fox Rothschild LLP*, No. 23-3194, 2024 WL 3371354, at *6 n.11 (D.N.J. July 11, 2024) ("It is well settled that [p]laintiffs cannot amend their [c]omplaint through an opposition brief." (citation omitted)).

*Detox Cherry Hill, LLC*, No. 19-17287, 2020 WL 4218409, at \*4 (D.N.J. July 22, 2020) (finding plaintiff "fail[ed] to plead any factual support to show more than a mere possibility of an employment relationship" and dismissing the claim based on a conclusory theory of a joint employer relationship).

Plaintiff's FAC, therefore, fails to plausibly allege facts to show a joint employer theory as to J&J.[13] Counts One, Two, Four, and Five, all of which are brought pursuant to either the ADA or NJLAD, asserted against J&J are, accordingly, dismissed.

### 2.    *State Law Claims (Counts Three and Six)*

Plaintiff's only remaining claims are Counts Three and Six asserted against J&J, which allege breach of contract and wrongful termination. Because both remaining claims are state law claims against a non-diverse party, the Court "*must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Masco*, 204 F.3d 109, 123 (3d Cir. 2000) (emphasis in original) (citations omitted). Plaintiff has not provided the Court with any such

---

[13] Moreover, many allegations in the FAC used to support joint employment are attributed to "Corporate Defendants[,]" defined in the FAC as J&J and J&J China collectively. (*See, e.g.*, FAC ¶¶ 5, 23 ("Corporate Defendants made decisions with respect to [Plaintiff's] employment from its United States locations in New Jersey[.]").) Courts in this district routinely dismiss complaints when liability and wrongdoing "lump several defendants together without setting forth what each particular defendant is alleged to have done[,]" *Ingris v. Borough of Caldwell*, No. 14-855, 2015 WL 3613499, at \*5 (D.N.J. June 9, 2015); *see also Risis v. Solakian*, No. 23-4188, 2026 WL 1878599, at \*4 (D.N.J. June 30, 2026) ("[B]ecause all counts in the complaint appear to be brought against all [d]efendants without differentiating alleged conduct as to any individual defendant, each cause of action may be dismissed for improper group pleading."); *Karupaiyan v. Tata Consultancy Servs.*, No. 22-1349, 2025 WL 2351073, at \*4 (D.N.J. Aug. 12, 2025) (same). Additionally, even though the contours of joint employment are highly factual, *Washington v. Client Network Servs. Inc.*, 590 F. App'x 126, 130 (3d Cir. 2014) (citing *Graves v. Lowery*, 117 F.3d 723, 729 (3d Cir. 1997)), a complaint still must put defendants "on notice of the claims against each of them[,]" *Faria v. Norbet-Beyer*, No. 25-16288, 2026 WL 1864369, at \*3 (D.N.J. June 29, 2026) (quoting *Mills v. Ethicon, Inc.*, 506 F. Supp. 3d 363, 386-87 (D.N.J. 2019)).

18

considerations.  (*See generally* Pl.'s Opp'n to J&J's Mot.; Pl.'s Oct. 17, 2025, Sur-reply.) The Court, therefore, declines to exercise supplemental jurisdiction over the remaining state-law claims asserted against J&J in the FAC. *See, e.g., A.S. v. Ocean Cnty. Fire Acad.,* No. 19-11306, 2021 WL 1169013, at *4 (D.N.J. Mar. 26, 2021) (dismissing remaining state law claims because plaintiff did not provide reasons to exercise supplemental jurisdiction over them).

Counts Three and Six asserted against J&J are, accordingly, dismissed.[14]

## IV.    CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss are granted. Plaintiff's FAC is dismissed without prejudice. The Court will issue an Order consistent with this Memorandum Opinion.

_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

DATED:    7/23/26

---

[14] Because the Court finds that dismissal of all claims asserted against J&J appropriate, it need not reach the other arguments J&J raised in its motion.